IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION


GEORGE H. DUKE                                                                              PLAINTIFF

V.                                                        CIVIL ACTION NO.1:11CV220-MPM-DAS

PERFORMANCE FOOD GROUP, INC.                                                  DEFENDANT


ORDER

This matter is before the court on motion of the plaintiff to determine appropriate fees for his physician witnesses (# 104). After considering the matter, the court finds as follows:

THE PARTIES' CONTENTIONS

In the present case, the court is asked to determine whether it will consider treating physicians as experts entitled to reasonable compensation for their time, or as ordinary fact witnesses, limited to the statutory witness fee of forty dollars per day. The plaintiff contends he should be required to pay his treating physician witnesses the daily witness fee of forty dollars per day prescribed by 28 U.S.C. § 1821. He also challenges the fees requested by his doctors as unreasonable. The plaintiff's two treating physicians, Drs. James S. Woodard and John E. Stanback, who testified at trial pursuant to subpoena, both contend they are expert witnesses and entitled to reasonable compensation, consistent with their professional standing. Dr. Woodard, a board-certified internist, demanded and received a fee of $2,400.00 plus mileage. Dr. Stanback, a family practice doctor, initially requested a fee of $5,000.00 plus mileage, but invoiced $4,000.00, plus his mileage. Both doctors contend they had to set aside an entire day from their practices because of the trial subpoenas. Thus Dr. Woodard claims $300.00 dollars per hour, while Dr. Stanback is claiming $500.00 per hour.

The court, having considered the arguments of the parties and the conflicting authority from other jurisdictions, finds that treating physicians testifying about the treatment of their patients will typically be expert witnesses. In testifying about the diagnosis, treatment, and prognosis of their patients and the impact of injuries or illness on an individual's present and future abilities and limitations, physicians are providing expert witness testimony. Fed. R. Evid. 702. They are, therefore, entitled to reasonable compensation for their time in depositions or at trial pursuant to Rules 26(b)(4)(E) of the Federal Rules of Civil Procedure and Rule 45(d)(3)(A)(iv) and (d)(3)(C)(ii).

The plaintiff argues that he did not select or retain either of these physicians to provide expert testimony at trial, and only designated these physicians as experts because Local Rule 26(a)(2)(D) required him to do so. That rule mandates that a party "designate physicians and other witnesses who are not retained or specially employed to provide expert testimony but are expected to be called to offer expert opinions at trial." He argues that notwithstanding the designation, he never qualified the physicians as experts; never tendered them as experts; and never sought expert opinion testimony from them. Therefore, plaintiff does not believe that he owes them any amount over the statutory fee. He also voices concerns about whether he can be required to pay these non-retained experts any fee they demand.

Finding no cases directly on point in Mississippi, the plaintiff cites *Robbins v. Ryan's Steak House East, Inc.*, 223 F.R.D. 448 (S.D. Miss. 2004) and *Sims v. City of Aberdeen*, 2011 WL 132362 (N.D. Miss. Jan. 14, 2011). In *Robbins* the court held that treating physicians are expert witnesses, who must be timely and properly designated as such. It did not address the issue of compensation for these witnesses.

In what at first glance appears to be a contrary decision, the court in *Sims* had to decide whether, and to what extent, it would allow a treating physician to testify, where the physician had not been designated as an expert but his treatment records were provided in discovery. There the court allowed the physician to testify about matters set forth in the medical records and noted that an amendment to the local rules impacted the decision. While the local rule at one time unconditionally mandated the designation of treating physicians as experts, the amended rule required expert designations only when non-retained physicians "are expected to be called to offer expert opinions at trial." *Sims*, 2011 WL 132362 at *5, citing L.U.Civ.R. 26(a)(2)(D). The court held that the treating physician could testify to facts and opinions related to his treatment of the plaintiff, and explained:

> In rare instances a treating physician may be called to testify as to basic facts known to him as the treating physician without expressing any opinion at all. It can be argued that such a witness is simply a fact witness who happens to be a physician and that the calling party should not be required to comply with the rules regarding expert witness disclosures. This situation is one that is a departure from the ordinary situation contemplated by the rules and is left to the discretion of the trial judge.

*Id*.

However, as the plaintiff concedes, this case is not directly on point. The physician was prohibited because of the discovery violation from offering expert testimony, and restricted to the scope of the disclosed records. The court was not considering what testimony was "factual" versus "expert" at that point in the case. That distinction would be made at the trial.

Woodard and Stanback both cite to the *Professional Guide for Attorneys & Physicians*. This guide was jointly drafted and issued by the Mississippi State Bar and the Mississippi State Medical Association. It seeks to educate and guide physicians about what is expected and useful

in medical reports requested by attorneys. It explains the difference between treating and attending physicians to educate the legal community. It is clearly an attempt by the governing bodies of the two professions to provide a framework and protocols to help members of the profession work cooperatively together. No doubt, to the extent that both professions abide by these guidelines, misunderstandings and tensions between these professios can be reduced. This joint policy both declares that: “The physician has the obligation to cooperate with this patient’s attorney” and that, “[t]he physician is entitled to charge fair and reasonable compensation for depositions and court appearances. It is the intention of both professions that a testifying physician shall not suffer a financial loss because of his appearance at deposition or in court.” While persuasive, these guidelines, by their terms, are not given the force of law.

CONFLICTING LEGAL AUTHORITY

The federal courts have split on the question of whether treating physicians should be treated as expert witnesses, and when they agree on the outcome, they justify the outcome with differing rationales.

Treating Physicians as Ordinary Witnesses

*Baker v. Taco Bell Corp*., 163 F.R.D. 348 (D. Co. 1995) is typical of the cases that find treating physicians should be compensated like ordinary fact witnesses. The *Baker* court found that treating physicians should be paid only the statutory witness fee. It reasoned:

> Treating physicians are not retained for trial. The testimony is based on their personal knowledge of the treatment of the patient and not information acquired from outside sources for the purpose of giving an opinion in anticipation of trial. They are witnesses testifying to the facts of their examination, diagnosis and treatment of a patient. It does not mean that the treating physicians do not have an opinion as to the cause of an injury based on their examination of the patient or to the degree of the injury in the future. These opinions are a necessary part of

> the treatment of the patient. Such opinions do not make the treating physicians experts as defined by Rule 26 (b)(4)(C).

*Id.* at 349. *Baker* also noted that experts specially retained for litigation were required to submit a written report, but treating physicians did not have to prepare a report.

The *Baker* court also refused to give effect to Colorado's similar interprofessional code, holding that while the court would not prohibit parties from agreeing to different, reasonable compensation, physicians could not demand more than the statutory fee as a matter of law.

Likewise, the district court in *Fisher v. Ford Motor Co.*, 178 F.R.D. 195 (N.D. Ohio 1998) held that the plaintiff's treating physicians were to be treated as ordinary fact witnesses and therefore due only the statutory fee for their depositions. That court acknowledged that Rule 26(b)(4(C) of the Federal Rules permitted witnesses retained in anticipation of litigation to receive reasonable compensation because of their specialized expertise, but noted an Advisory Committee Note providing that a witness "who was an actor or viewer with respect to the transactions or occurrences that are a part of the subject matter of the lawsuit ... should be treated as an ordinary witness." *Id.* at 197. *Baker* found, "Courts have consistently held that treating physicians are not expert witnesses merely by virtue of their expertise in their respective fields. Only if their testimony is based on outside knowledge, not on personal knowledge of the patient and his or her treatment, may they be deemed experts." *Id.* The court concluded that if a doctor's practice meant frequent depositions or court appearances, "[t]he law nonetheless imposed an obligation on all witnesses to provide their testimony. No exceptions are made for hardship, inconvenience, or professional status." *Id.* at 199. *See Patel v. Gayes*, 984 F.2d 214, 217-18 (7th Cir. 1993) (treating physicians were expert witnesses only because they relied on

evidence not arising from their own treatment of the patient and issued opinions about the standard of care); *Mangla v. University of Rochester*, 168 F.R.D. 137 (W.D. N.Y. 1996).

Treating Physicians as Expert Witnesses

The courts finding that treating physicians are entitled to reasonable compensation for their testimony have offered differing rationales for this finding. In one group of cases, the courts have decided as a matter of policy that physicians must be provided with reasonable compensation. Typical of this line of cases is *Haslett v. Texas Industries, Inc.*, 1999 WL 354227 (N.D. Tex., May 20, 1999). The court cited with approval the *Fisher* case, *supra*, for authority for its finding that Rule 26(b)(4)(C), which requires reasonable compensation to an expert witness, did not apply to the plaintiff's treating physician witness, because "[t]his rule does not apply 'to the expert whose information was not acquired in preparation for trial, but rather was an actor or viewer'" with respect to the occurrences in the lawsuit. *Id.* at *1. Nevertheless, the *Haslett* court noted that it was customary within the district to provide physician witnesses with compensation over the statutory fee. Furthermore the court noted: "Physicians provide invaluable services to the public and should be remunerated for their time when they cannot deliver medical care. They often have substantial overhead costs that they incur whether they are creating a patient or testifying about one." *Id.* at 2. Litigators and clients typically "respect the need to compensate physician-witnesses to the extent necessary to cover their overhead costs and to pay them a fee commensurate with their professional standing and special expertise." *Id. See Harvey v. Shultz*, 200 WL 33170885 (D. Kan. Nov. 16, 2000) (Citing *Haslett*, a Kansas interdisciplinary code and the practice in the state courts of Kansas, the court decided it had discretionary authority to order compensation above the statutory witness fee.)

Another group of courts have found treating physicians will typically provide expert testimony and thus be entitled to reasonable compensation, but base their findings on the Federal Rules of Civil Procedure and the Federal Rules of Evidence. *See Lamere v. N.Y. State Office for the Aging*, 223 F.R.D. 85 (N.D. N.Y. 2004).

In *Weimer v. Honda of America Manufacturing, Inc.*, 2008 WL 4503562 (S.D. Ohio Oct. 1, 2008), the court rejected the holding of its sister court in *Fisher* and explained why the testimony of treating physicians is expert testimony. The *Weimer* court first pointed out that *Fisher* relied on a 1970 Comment to the Rules that explained witnesses who did not acquire their knowledge in anticipation of litigation were not experts for the purpose of Rule 26. The *Weimer* court declined to follow *Fisher* because "it fails to recognize that Rule 26(b)(4) was substantially revised in 1993. Prior to that date, Rule 26(b)(4) addressed only discovery of experts whose opinions were 'acquired or developed in anticipation of litigation or for trial....' Rule 26(b)(4) (1970)." *Id.* at 2.

The *Weimer* decision found the 1993 amendments expanded the scope of the rule to address discovery of three categories of experts:

> 1. Retained experts who may testify at trial and from whom a report is required;
>
> 2. Non-retained experts who are disclosed as witnesses who may offer Rule 702 testimony at trial but who are not required to submit a report; [and]
>
> 3. Retained experts who will not testify at trial (consultants).

*Id*. (citing *Hoover v. United States*, 2002 WL 1949734 at *4(N.D. Ill 2002)).

Furthermore the *Weimer* court noted that beginning with the 1993 amendments, a Rule 26 "expert" is defined by reference to the Federal Rules of Evidence. An expert is "any person

who may be used at trial to present evidence under Rule 702, 703, or 705." Fed. R. Civ. P 26(a)(2)(A) (1993).

The obvious question here is whether the physicians' testimony falls within Rule 702's definition of expert testimony or Rule 701, which allows lay testimony in the form of an opinion. To offer expert testimony, a witness must be qualified as an expert by "knowledge, skill, experience, training or education." Fed. R. Evid. 702. Such an expert may testify in "the form of an opinion or otherwise" if their specialized knowledge will assist the trier of fact and the testimony is based upon sufficient facts or data; is the product of reliable principles or methods; and the expert has in fact reliably applied those principles and methods to the facts of the case. *Id.* While there may be elements of purely factual testimony, a treating physician will usually also offer testimony within the ambit of Rule 702. As noted in *Weimer,* "the treating physician who testifies about examination, diagnosis, and treatment of a patient necessarily draws upon his skill, training, and experience as a doctor. *Weimer*, 2008 WL 450362 at *2.

After considering the matter, this court adopts the reasoning of the court in *Weimer* and finds that treating physicians will typically qualify as expert witnesses. Furthermore, as the *Weimer* court held, reasonable compensation to expert witnesses can be compelled under Fed.R.Civ.P 45 where, as here, the doctor testifies at trial pursuant to subpoena.

TESTIMONY IN THIS CASE

This court has reviewed the testimony of the two physicians at trial to determine the nature of testimony given. Duke made no attempt to qualify either of these witnesses as an expert witness,

beyond the bare fact that each is a practicing physician, and the plaintiff never tendered either as an expert witness. The court nevertheless finds that each offered expert testimony fitting the definition of Rule 702 of the Federal Rule of Evidence.

Dr. Woodard, a hospitalist during his treatment of the plaintiff, described a transient ischemic attack, (TIA) and how it is clinically distinguished from a stroke, or cerebrovascular accident. He testified that Duke had an echocardiogram of the heart, which was done to determine if clotting had caused Duke's symptoms. He explained the difference between the levels of care between the intensive care unit, the step-down unit and a regular hospital room. On cross-examination, he testified that the plaintiff's symptoms resolved quickly and that this was clinically consistent with a TIA or a mild stroke. On re-direct, after being directed to review a scan, he confirmed that the plaintiff had a stroke and that an individual could have lasting effects even from a mild stroke.

Dr. Stanback testified to his treatment of Duke, including his examination of the plaintiff. Duke had a normal neurological examination, normal symmetry of face, and equal strength after his hospital stay. Stanback testified that by definition the symptoms of a TIA would resolve in about twenty-four hours. If symptoms persisted beyond that time, a stroke would be diagnosed. He testified that Duke was still having some symptoms five months later, when symptoms would normally have subsided more quickly. By September 7, 2010, he opined the plaintiff had reached "maximum medical benefit" and could return to his work without restrictions.

This testimony encompasses specialized scientific information, well beyond the ken of lay persons, even when set forth in a declarative "factual" manner. Each witness offered opinions based on their factual knowledge, and each witness applied their medical expertise. While there

may be cases where physicians truly are factual as opposed to expert witnesses, this case is not one of them.

REASONABLE FEES

The plaintiff has voiced an understandable concern about the fees for which he may be held liable, where neither he nor his physicians have established a relationship for the purposes of procuring expert witness testimony. However, the expert is entitled to a reasonable fee for his services, and the court has the authority to determine what constitutes a reasonable fee. *See Knight v. Kirby Inland Marine*, 482 F.3d 347, 356 (5th Cir. 2007). "There must be some reasonable relationship between the services rendered and the remuneration to which the expert is entitled. Unless the courts patrol the battlefield to ensure fairness, the circumstances invite extortionate fee setting." *Fiber Optic Designs, Inc. v. New England Pottery, LLC*, 262 F.R.D. 586, 590 (D. Colo. 2009). Furthermore, the party seeking reimbursement has the burden of demonstrating the fee sought is reasonable, and the court may use its discretion to determine a reasonable fee. *New York v. Solid Chem. Co.*, 210 F.R.D. 462, 468 (W.D. N.Y. 2002).

To determine what constitutes a reasonable fee, the court starts with the, "basic premise, the expert's fee should not be so high as to impair a party's access to necessary ... [evidence] or result in a windfall to the expert." *Grady v. Jefferson County Board of County Commissioners*, 249 F.R.D. 657, 659 (D. Colo. 2008). Among the factors a court may consider to determine the reasonableness of a fee, including: (1) the witness's area of expertise; (2) the education and training required to provide the insight that is sought; (3) prevailing rates for other comparable experts; (4) the nature, quality and complexity of the responses provided; (5) the cost of living in

a particular geographic area; and (5) the fees traditionally charged by the expert on related matters. *Magee v. The Paul Revere Life Ins. Co*, 172 F.R.D. 627, 645 (E.D. N.Y. 1997).

Both doctors traveled four hours round trip. Though the court allowed each witness to testify out of turn, these doctors had to prepare for some delays. Consequently, the court finds that each is entitled to be compensated for eight hours of time.

Stanback is a family practitioner, and the only physician staffing his clinic. Twenty-five patients had to be rescheduled because of his court testimony. Dr. Woodard, a board-certified internist, likewise cancelled all patient visits on the day of his testimony. Unfortunately, neither physician has provided the court with any specific information related to his overhead or expected earnings for a day of his medical practice.

However the court finds no reason to doubt that the $300.00 per hour charged by Dr. Woodard is reasonable. It is within the range of hourly charges this court sees in motions seeking attorneys' fees. While the $500.00 per hour sought by Dr. Stanback may also be reasonable, he has provided the court with no information to explain the difference between the fee he seeks and the fee sought by Woodard. *Broushet v. Target Corp.*, 274 F.R.D. 432 (E.D. N.Y. 2011)(Court set the fee for experienced orthopedist at $400.00 per hour and limited the time involved in preparing for and giving a deposition).

## CONCLUSION

Accordingly, the court finds that the treating physicians in this case testified as expert witnesses and are therefore entitled to reasonable compensation for their time. Dr. Stanback shall be paid at the rate of $300.00 per hour for eight hours, plus his mileage. This shall be paid within

twenty-one days.  Dr. Woodard has received his fee which is hereby determined to be reasonable.

SO ORDERED this the 3rd day of February, 2014.


                                           /s/ David A. Sanders
                                           UNITED STATES MAGISTRATE JUDGE